1 | BENJAMIN B. WAGNER
United States Attorney
2 | RUSSELL L. CARLBERG
TODD D. LERAS
3 | PAUL A. HEMESATH
Assistant U.S. Attorneys
4 | 501 I Street, Suite 10-100
Sacramento, CA 95814
5 | Tel: (916) 554-2700
Fax: (916) 554-2900
6

**FILED**

MAY 30 2013

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
                    DEPUTY CLERK

7

8            IN THE UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11 | UNITED STATES OF AMERICA,          ) CASE NO. 2:12 CR 315 JAM
                                       )
12 |                     Plaintiff,    ) VIOLATIONS: 18 U.S.C. § 1341 -
                                       ) Mail Fraud (18 Counts); 18 U.S.C.
13 | v.                                ) § 1343 - Wire Fraud (32 Counts);
                                       ) 18 U.S.C. §§ 981(a)(1)(C),
14 | LEE LOOMIS,                       ) 981(a)(1)(D), 982(a)(2); 28
       aka Lawrence Leland Loomis,    ) U.S.C. § 2461(c) - Criminal
15 | JOHN HAGENER,                     ) Forfeiture
     DARREN FEHST,                     )
16 | MICHAEL LLAMAS,                   )
     PETER WOODARD,                    )
17 | JOSEPH A. GEKKO, and              )
     DAWN C. POWERS,                   )
18 |                                   )
                        Defendants.    )
19 | _____    )

20

21        S U P E R S E D I N G   I N D I C T M E N T

22

23 | COUNTS ONE THROUGH TWELVE: [18 U.S.C. § 1341 - Mail Fraud]

24        The Grand Jury charges:

25                         LEE LOOMIS,
                 aka Lawrence Leland Loomis, and
26                        JOHN HAGENER,

27 | defendants herein, as follows:

28

# I.  INTRODUCTION

At all times relevant to this Superseding Indictment:

1.    Defendant LEE LOOMIS, who was also known as Lawrence Leland Loomis, resided in the State of Illinois before relocating to the State and Eastern District of California in 2007.  Defendant LOOMIS controlled an Illinois limited liability company named Loomis Wealth Solutions, LLC ("LWS") with offices in:  Roseville, California; Pleasanton, California; and elsewhere.  Through LWS, defendant LOOMIS held himself out as a wealth management consultant.

2.    Defendant LEE LOOMIS controlled a Delaware limited liability company named Advantage Financial Group Holdings, LLC ("AFGH").  AFGH was a holding company.  Defendant LEE LOOMIS solicited investors in California and Illinois to make minimum investments of $250,000 in AFGH in order to become "members" of the LLC.  Defendant LOOMIS thereby collected approximately $10 million from approximately 40 investors in AFGH.

3.    Defendant LEE LOOMIS, through AFGH, owned a controlling interest in a California limited liability company called Advantage Financial Partners of California, LLC ("AFP-CA").  AFP-CA had an office in Chico in the State and Eastern District of California.  AFP-CA was a business that acquired residential real estate and re-sold it to individuals whom defendant LOOMIS and others recruited as "nominee" purchasers.  Johnny E. Grivette, Jr. a/k/a/ Jay Grivette, charged elsewhere, was the manager of AFP-CA during 2006 and 2007.

4.    Defendant LEE LOOMIS controlled an Illinois limited liability company called Advantage Plan Plus, LLC ("APP").  In and around 2006, defendant LOOMIS solicited investors in California and Illinois to invest in APP by falsely promising them approximately 12%

returns on their investments in a "high yield" liquid "savings account." Defendant LOOMIS collected over $1.8 million from investors in APP.

5. Defendant JOHN HAGENER resided in the State of Illinois and periodically stayed and did business in the State and Eastern District of California. Defendant HAGENER was the father-in-law of defendant LOOMIS.

6. Defendants LEE LOOMIS and JOHN HAGENER controlled two Delaware limited liability companies: (1) Naras Secured Fund, LLC ("Naras #1"); and (2) Naras Secured Fund #2, LLC ("Naras #2"), (collectively, "Naras Funds").

7. Defendant JOHN HAGENER controlled a Delaware limited liability company called Lismar Financial Services, LLC ("Lismar"). Defendant HAGENER, through Lismar, managed the Naras Funds. The Naras Funds were purported Regulation D private placement offerings of unregistered securities that defendant LOOMIS offered to members of LWS and others.

8. Defendant JOHN HAGENER was a signatory on the bank accounts of the Naras Funds maintained at Washington Mutual Bank in both Roseville, California and Glendale Heights, Illinois.

9. Equity Trust Company ("Equity Trust") was a third-party entity, located in Elyria, Ohio, through which defendants LEE LOOMIS, JOHN HAGENER, and others arranged for investors to transfer retirement balances to the Naras Funds via a self-directed individual retirement account.

## II.  **THE SCHEME TO DEFRAUD**

10. Between no later than December 2007 and continuing through at least August 2008, in the State and Eastern District of California,

and elsewhere, defendants LEE LOOMIS, JOHN HAGENER and others known and unknown to the Grand Jury, did knowingly devise and intend to devise, and participate in a material scheme and artifice to defraud investors and to obtain money from investors by means of materially false and fraudulent pretenses, representations, and promises. As a result of the fraud, defendants LEE LOOMIS, JOHN HAGENER, and others, obtained money to which they were not entitled.

### III. WAYS AND MEANS

The principal ways and means used to accomplish the scheme to defraud were as follows:

11. Defendant LEE LOOMIS devised, orchestrated, and executed with others, including defendant JOHN HAGENER, a scheme to defraud victims who were induced to invest money in investment funds called the Naras Funds based on false representations that they were was safe, secured, guaranteed, liquid and would pay 12% annual returns.

12. Defendant LEE LOOMIS and others acting at his direction used and caused to be used newspapers and the United States mail to advertise investment seminars held in California, Illinois, and Washington. In advertisements and literature, defendant LEE LOOMIS held himself out as a successful investment advisor who could build wealth for "middle to upper middle income Americans." In addition, he marketed a wealth-building "Advantage" financial plan as "simply the best financial plan ever created."

13. Defendant LEE LOOMIS and others held initial two-hour seminars where he provided an overview of his wealth-building program and collected financial information from interested attendees, who were then screened for credit-worthiness and financial resources. Attendees with substantial savings, home equity, retirement accounts,

and/or high credit scores, were invited to come back to a weekend workshop where defendant LOOMIS and others acting at his direction made various representations and promises to investors to convince them to become members of LWS and to invest in the Naras Funds.

14.    Defendant LEE LOOMIS urged investors he recruited into his wealth-building program to "harvest" the equity in their own primary residences by refinancing their homes to obtain cash for investment in the Naras Funds.  He also encouraged members to move their money from their IRAs and 401(k) retirement accounts to self-directed IRAs from which money could then be invested in the Naras Funds.  Defendants LOOMIS and HAGENER often directed investors to wire their home equity and retirement monies to the Naras Funds, at times through a third-party.

15.    During the workshops, and in one-on-one meetings with investors, defendant LEE LOOMIS and others falsely represented that monies invested in the NARAS Funds would be invested in second mortgages paying a 14% annual rate of return and would be secured by deeds of trust on real properties.  Defendant LEE LOOMIS and others represented the Naras Funds to be safe, "liquid, high-yield accounts" that would pay investors a 12% annual rate of return, and could be fully redeemed after an investor's request.

16.    In truth, defendants LEE LOOMIS and JOHN HAGENER did not invest the Naras Funds in second mortgages, did not obtain secured deeds of trust, and the Naras Funds did not generate the 12% rate of return as promised.  Moreover, the Naras Funds were not liquid or readily redeemable.  Contrary to the representations made by defendants, funds provided by investors were often depleted in order to: (1) fund the operations of other companies affiliated with

defendant LOOMIS; (2) pay earlier investors in the Naras Funds,
earlier investors in APP, and earlier investors in AFGH, with money
collected from later investors in the Naras Funds; and (3) pay for
other undisclosed expenditures.  For instance, the Naras Funds account
statements dated June 30, 2008, reflected that investors had total
individual account balances exceeding $10 million in the aggregate.
In truth, the Naras Funds bank accounts actually held only
approximately $200,000 in the aggregate.

17.  Defendant LEE LOOMIS and others falsely represented to
investors that the Naras Funds' obligations to pay periodic
distributions to investors were secured by "guaranty" agreements made
by AFP-CA.  In truth, AFP-CA's guarantee was illusory because, unknown
to many investors: (1) LOOMIS controlled AFP-CA; (2) AFP-CA did not
have substantial assets to back the "guaranty"; and (3) unknown to
most investors, AFP-CA, through its holding company, had actually
borrowed approximately $1.9 million from the Naras Funds and not
repaid that debt.

18.  With defendant LEE LOOMIS's knowledge, defendant JOHN
HAGENER and others prepared, caused to be prepared, and caused to be
mailed monthly Naras Funds account statements for each investor
showing an individualized account number, account balance, and monthly
return on the balance consistent with an approximately 12% annualized
rate of return.  These Naras Funds account statements were sent via
the United States mail from Roseville, California; and Glendale
Heights, Illinois, to investors in the Eastern District of California
and elsewhere in furtherance of the scheme.  In truth, the NARAS Funds
did not maintain individualized accounts for investors; the balances
represented on the monthly statements were false; and the purported

monthly earnings were false.

19. As a result of various fraudulent acts of the defendants, investors in the Naras Funds lost over $7 million dollars.

## IV.  THE MAILINGS

20. On or about the dates set forth below, defendants LEE LOOMIS, JOHN HAGENER, and others known and unknown to the Grand Jury, for the purpose of executing the above-described scheme, did knowingly place, and cause to be placed, in an authorized depository for mail matter, the mail matter described below, to be sent and delivered by the United States Postal Service:

| Ct | Date | Sender | Recipient | Item |
|----|------|--------|-----------|------|
| 1 | 03/28/2008 | JOHN HAGENER, Naras Secured Fund #2, LLC, Roseville, CA | Investor M.N., Orangevale, CA | Washington Mutual Bank cashier's check for $3,000.00, sent via U.S. Mail |
| 2 | 07/01/2008 | JOHN HAGENER, Naras Secured Fund #2, LLC, Roseville, CA | Investors D.R.B. and L.B., San Jose, CA | Naras Secured Fund #2 investment report dated June 1-30, 2008, sent via U.S. Mail |
| 3 | 07/01/2008 | JOHN HAGENER, Naras Secured Fund #2, LLC, Roseville, CA | Investor M.N., Orangevale, CA | Naras Secured Fund #2 investment report dated June 1-30, 2008, sent via U.S. Mail |
| 4 | 07/01/2008 | JOHN HAGENER, Naras Secured Fund, LLC, Roseville, CA | Investors R.P. and G.P, Redding, CA | Naras Secured Fund investment report dated June 1-30, 2008, sent via U.S. Mail |

| Ct | Date | Sender | Recipient | Item |
|----|------|--------|-----------|------|
| 5 | 07/30/2008 | JOHN HAGENER, Naras Secured Fund #2, LLC, Roseville, CA | Investors P.T. and K.T., Crystal Lake, IL | Washington Mutual Bank cashier's check for $971.93, sent via U.S. Mail |
| 6 | 08/01/2008 | JOHN HAGENER, Naras Secured Fund #2, LLC, Roseville, CA | Investors M.I. and L.M., Redding, CA | Naras Secured Fund #2 investment report dated July 1-31, 2008, sent via U.S. Mail |
| 7 | 08/01/2008 | JOHN HAGENER, Naras Secured Fund #2, LLC, Roseville, CA | Investor H.L.F., Los Gatos, CA | Naras Secured Fund #2 investment report dated July 1-31, 2008, sent via U.S. Mail |
| 8 | 08/01/2008 | JOHN HAGENER, Naras Secured Fund #2, LLC, Roseville, CA | Investors P.A. and T.A., Roseville, CA | Naras Secured Fund #2 investment report dated July 1-31, 2008, sent via U.S. Mail |
| 9 | 08/01/2008 | JOHN HAGENER, Naras Secured Fund #2, LLC, Roseville, CA | Investors E.A. and N.A., Shingle Springs, CA | Naras Secured Fund #2 investment report dated July 1-31, 2008, sent via U.S. Mail |
| 10 | 08/01/2008 | JOHN HAGENER, Naras Secured Fund #2, LLC, Roseville, CA | Investors M.D. and J.D., Sunnyvale, CA | Naras Secured Fund #2 investment report dated July 1-31, 2008, sent via U.S. Mail |
| 11 | 08/01/2008 | JOHN HAGENER, Naras Secured Fund #2, LLC, Roseville, CA | Investors R.E. and L.E., New Berlin, WI | Naras Secured Fund #2 investment report dated July 1-31, 2008, sent via U.S. Mail |

| Ct | Date | Sender | Recipient | Item |
|----|------|--------|-----------|------|
| 12 | 11/03/2008 | JOHN HAGENER, Naras Secured Fund #2, LLC, Roseville, CA | Investors D.R.B. and L.B., San Jose, CA | Letter from JOHN HAGENER and Naras Secured Fund #2 with investment report dated October 1-31, 2008, sent via U.S. Mail |

All in violation of Title 18, United States Code, Sections 2 and 1341.

COUNTS THIRTEEN THROUGH TWENTY-THREE: [18 U.S.C. § 1343 - Wire Fraud]

The Grand Jury further charges:

LEE LOOMIS,
aka Lawrence Leland Loomis,
JOHN HAGENER,

defendants herein, as follows:

1.    The allegations contained in paragraphs 1-19 of Counts One through Twelve of this Superseding Indictment are re-alleged and incorporated herein as if set forth in full.

2.    On or about the dates set forth below, in the State and Eastern District of California, defendants LEE LOOMIS, JOHN HAGENER, and others known and unknown to the Grand Jury, for the purpose of executing the above-described scheme, did knowingly cause to be transmitted by means of wire communication in interstate commerce, certain writings, signs, signals, pictures, and sounds, as described below:

| CT | DATE OF WIRE | DESCRIPTION OF APPROXIMATE WIRE COMMUNICATION | SENDER | RECIPIENT |
|----|--------------|----------------------------------------------|--------|-----------|
| 13 | 03/26/2008 | $50,000 interstate wire transfer sent via Fedwire system from investor T.O. | Wells Fargo Bank, San Francisco, CA | Washington Mutual Bank, Roseville, CA |

| CT | DATE OF WIRE | DESCRIPTION OF APPROXIMATE WIRE COMMUNICATION | SENDER | RECIPIENT |
|---|---|---|---|---|
| 14 | 03/27/2008 | $120,000 interstate wire transfer sent via Fedwire system from Equity Trust on behalf of investors P.A. and T.A. | United Western Bank, Denver, CO | Washington Mutual Bank, Roseville, CA |
| 15 | 04/25/2008 | $250,000 interstate wire transfer sent via Fedwire system from investor D.R.B. | Wells Fargo, San Francisco, CA | Washington Mutual Bank, Roseville, CA |
| 16 | 05/01/2008 | $447,633 interstate wire transfer sent via Fedwire system from Equity Trust on behalf of investors R.J. and I.J. | United Western Bank, Denver, CO | Washington Mutual Bank, Roseville, CA |
| 17 | 05/01/2008 | $123,880 interstate wire transfer sent via Fedwire system from Equity Trust on behalf of investor T.O. | United Western Bank, Denver, CO | Washington Mutual Bank, Roseville, CA |
| 18 | 06/03/2008 | $250,000 interstate wire transfer sent via Fedwire system from investors R.E. and L.E. | Wells Fargo Bank, San Francisco, CA | Washington Mutual Bank, Roseville, CA |
| 19 | 06/17/2008 | $396,398 interstate wire transfer sent via Fedwire system from investors M.D. and J.D. | Comerica Bank, Detroit, MI | Washington Mutual Bank, Roseville, CA |
| 20 | 06/30/2008 | $262,926 interstate wire transfer sent via Fedwire system from Lender Services Direct on behalf of investor H.L.F. | South County Bank, Rancho Santa Margarita, CA | Washington Mutual Bank, Roseville, CA |

| CT | DATE OF WIRE | DESCRIPTION OF APPROXIMATE WIRE COMMUNICATION | SENDER | RECIPIENT |
|----|--------------|-----------------------------------------------|--------|-----------|
| 21 | 08/04/2008 | $244,925 interstate wire transfer sent via Fedwire system from Equity Trust Co. on behalf of investor G.C. | United Western Bank, Elyria, OH | Washington Mutual Bank, Roseville, CA |
| 22 | 08/14/2008 | $174,400 interstate wire transfer sent via Fedwire system from Equity Trust Co. on behalf of investor H.L.F. | United Western Bank, Elyria, OH | Washington Mutual Bank, Roseville, CA |
| 23 | 08/14/2008 | Letter from LEE LOOMIS, sent via electronic mail | adygdon@ loomiswealth. com | Investors P.T. and K.T., Crystal Lake, IL |

All in violation of Title 18, United States Code, Sections 2 and 1343.

COUNTS TWENTY-FOUR THROUGH TWENTY-SIX:  [18 U.S.C. § 1341 - Mail Fraud]

The Grand Jury further charges:

LEE LOOMIS,
aka Lawrence Leland Loomis,
and
DARREN FEHST,

defendants herein, as follows:

## I.  INTRODUCTION

At all times relevant to this Superseding Indictment:

1.    The allegations contained in paragraphs 1, 2, 3, 6, 7 and 12 of Counts One through Twelve of this Superseding Indictment are re-alleged and incorporated herein as if set forth in full.

2.    Defendants LEE LOOMIS and JOHN HAGENER controlled a California corporation called Advanced Lending Group, Inc., dba Nationwide Lending Group ("NLG").  NLG was a loan brokerage firm that

11

1 originated over 100 mortgage loans that were sold on the secondary
2 loan market. Defendant LEE LOOMIS through an entity in which he
3 exercised a controlling interest named Advantage Financial Partners,
4 LLC ("AFP-CA") acquired control of NLG in or around 2006-2007, and
5 placed defendant JOHN HAGENER in the position of President. In early
6 2007, NLG had an office in Temecula, California. From approximately
7 September 2007 through April 2008, Christopher Jared Warren, charged
8 elsewhere, managed the day-to-day loan origination business of NLG
9 from an office in Roseville, California.

10     3. Defendant DARREN FEHST was an appraiser licensed in the
11 State of California. Defendant FEHST controlled an entity named
12 Appraiser Networking Solutions, LLC ("ANS") a California limited
13 liability company.

14     4. Flagstar Bank was a bank the accounts of which were then
15 insured by the Federal Deposit Insurance Corporation.

16 II. **THE SCHEME TO DEFRAUD**

17     5. Beginning no later than in August 2007 and continuing
18 through at least December 2007, in the State and Eastern District of
19 California, and elsewhere, defendants LEE LOOMIS, DARREN FEHST, and
20 others known and unknown to the Grand Jury, did knowingly devise and
21 intend to devise, and participate in a material scheme and artifice to
22 defraud residential real property lenders and participants in the
23 secondary loan market and to obtain property by means of materially
24 false and fraudulent pretenses, representations, and promises from
25 such lenders and participants. As a result of the fraud, defendants
26 LEE LOOMIS, DARREN FEHST, and others, obtained real property and money
27 to which they were not entitled.
28 ///

# III.  WAYS AND MEANS

The principal ways and means used to accomplish the scheme to defraud were as follows:

6.  As part of his wealth-building "Advantage" financial plan, defendant LEE LOOMIS required members who joined Loomis Wealth Solutions ("LWS")  (and who could medically qualify) to purchase whole life insurance indexed to the stock market through a life insurance company known the Grand Jury and identified herein as "Insurance Company A."  Defendant LOOMIS promised members that by doing so, they would earn the upside of the stock market without the risk.  Defendant LOOMIS and others acting at his direction promised that LWS would reimburse members their monthly life insurance payments for one year or until such time that they generated sufficient income through a "nominee" residential real estate purchase program, described below, to pay the life insurance premiums.

7.  Defendant LEE LOOMIS and others acting at his direction also falsely represented and promised that members who agreed to be "nominees" in the purchase of residential real estate investment properties selected by defendant LOOMIS would bear no costs associated with having title to the homes in their names.  Defendant LOOMIS falsely promised to pay all down payments, fees, mortgages, property taxes, and upkeep on the properties.

8.  Defendant LEE LOOMIS falsely represented that the rental income on the homes would cover the life insurance premiums due to Insurance Company A, cover all of the expenses of home ownership, and would be sufficient to generate additional profits.  Defendant LOOMIS guaranteed investors that one of his companies - Advantage Financial Group Holdings, LLC ("AFGH") - would make the payments in the event

1 | rental income was insufficient to make all of these payments.
2 | Defendant LOOMIS and others acting at his direction referred to these
3 | guarantees as his "assurance" plan.

4 |     9. To provide properties that nominees could buy, defendant
5 | LOOMIS and others arranged for one of his companies, AFP-CA, to
6 | purchase distressed real properties at market value. Defendant LOOMIS
7 | then caused the properties to be "flipped" or quickly resold to
8 | members of LWS at artificially inflated prices. In order to carry out
9 | the scheme and obtain financing for nominee buyers, defendant LOOMIS
10 | arranged for an appraiser - defendant DARREN FEHST - to provide
11 | artificially high appraisals and misled lenders into believing
12 | nominees had made down payments and, therefore, had a significant
13 | financial stake in the properties.

14 |     10. The manager of AFP-CA, Johnny E. Grivette, Jr., a/k/a Jay
15 | Grivette, acting with the approval and ratification of defendant LEE
16 | LOOMIS, signed a contract with defendant DARREN FEHST, an appraiser,
17 | that obligated AFP-CA to make payments to defendant FEHST's company
18 | ANS consisting of approximately 5% of the "potential profit" on
19 | properties appraised by defendant FEHST. During 2007, AFP-CA's
20 | arrangement with defendant FEHST changed to a payment of $5,000 per
21 | home and a monthly payment of $30,000. Defendant FEHST appraised many
22 | of the properties AFP-CA sold to nominees at an artificially high
23 | price and falsely certified on the appraisals that he had no financial
24 | interest or stake in the transaction. Defendant FEHST thereby
25 | concealed his financial interest in the transactions from lenders and
26 | participants in the secondary loan market.

27 |     11. Between no later than May 2007 through at least December
28 | 2007, in furtherance of the scheme, the following residential real

properties were purchased by AFP-CA and then flipped to the nominee buyers listed below, in the State and Eastern District of California, and elsewhere:

| Property Description | Nominee Buyer(s) |
|---|---|
| 2820 Sweeney Road, Antioch, CA | D.D. and S.D. |
| 5918 Pebble Creek, Rocklin, CA | V.K. and P.K. |
| 387 Angelus St., Turlock, CA | K.H. and M.H. |
| 5077 Mesa Ridge Dr., Antioch, CA | L.H. and D.H. |
| 1126 W. Downs St., Stockton, CA | K.K. |
| 1917 Kern Mtn. Way, Antioch, CA | J.F. |
| 6882 Annapolis Quay, Stockton, CA | D.N. and T.N. |
| 11508 Pyrites Way, Gold River, CA | R.G. and J.G. |
| 730 Ashlynn Way, Stockton, CA | Y.T.W. and W.C. |
| 3830 Zaira Court, Stockton, CA | S.C. and P.B. |

12. Defendant LEE LOOMIS and others caused nominee buyers to obtain 80% financing on the inflated purchase price of the investment homes identified above through third-party mortgage lenders, often using the LOOMIS-controlled entity NLG to create the loan applications and sell the loans. The proceeds of the sales went to AFP-CA, which defendant LEE LOOMIS and others controlled.

13. As for the down payments to purchase the properties, defendant LOOMIS and others acting at his direction, including Jay Grivette, intentionally concealed from lenders, and participants in the secondary loan market that the nominee buyers were not making actual down payments for the properties purchased. At times, AFP-CA, the Naras Funds, and other entities controlled by defendant LOOMIS, reimbursed down payments back to nominee buyers outside of escrow. At other times, defendant LEE LOOMIS and others induced the escrow

15

officer handling loan closings to apply monies and credits from one escrow to another in order to conceal the fact that nominees were not making down payments with their own funds.

14. Defendants LEE LOOMIS, DARREN FEHST, and others concealed from lenders and participants on the secondary loan market the true nature of the property flip transactions. That is, defendants concealed that LOOMIS, acting through various entities, was orchestrating non-arm's length sales, was using nominee purchasers that he controlled to buy his own properties, that the price of the properties was artificially inflated, and that defendant LOOMIS was making substantial payments to corruptly influence the appraiser, defendant FEHST.

15. As a result of the fraudulent acts of the defendants, lenders were induced to issue loans to the nominee buyers. In addition, as a result of the fraudulent acts of the defendants, lenders and participants on the secondary loan market suffered losses of over $2,500,000.

## IV. THE MAILINGS

16. On or about the dates set forth below, defendants LEE LOOMIS, DARREN FEHST, and others known and unknown to the Grand Jury, for the purpose of executing the above-described scheme, did knowingly place, and cause to be placed, in an authorized depository for mail matter, the mail matter described below, to be sent and delivered by the United States Postal Service, or knowingly caused the mail matter described below to be delivered by private and commercial interstate carrier:

| Ct | Date | Sender | Recipient | Item |
|----|------|--------|-----------|------|
| 24 | 06/20/2007 | Placer County Recorder's Office, Auburn, CA | Flagstar Bank, Troy, MI | Deed of Trust re: 5918 Pebble Creek Dr., Rocklin, CA, sent via U.S. Mail |
| 25 | 10/05/2007 | AFP-CA Chico, CA | Darren Fehst, ANS, Brentwood, CA | Check for $5,000 for 3830 Zaira Court, Stockton, CA, sent via FedEx |
| 26 | 10/08/2007 | San Joaquin County Recorder's Office, Stockton, CA | Lender Services Direct, Mission Viejo, CA | Deed of Trust for 730 Ashlynn Way, Stockton, CA, sent via U.S mail |

All in violation of Title 18, United States Code, Sections 2 and 1341.

COUNTS TWENTY-SEVEN THROUGH TWENTY-NINE: [18 U.S.C. § 1341 - Mail Fraud]

The Grand Jury further charges:

LEE LOOMIS,
aka Lawrence Leland Loomis,
MICHAEL LLAMAS,
PETER WOODARD, and
JOSEPH A. GEKKO, and
DAWN C. POWERS,

defendants herein, as follows:

## I.   INTRODUCTION

At all times relevant to this Superseding Indictment:

1.     The allegations contained in paragraphs 1, 2, and 4 of Counts Twenty-Four through Twenty-Six of this Superseding Indictment are re-alleged and incorporated herein as if set forth in full.

2.     Defendants MICHAEL LLAMAS and PETER WOODARD resided in San Joaquin County, in the State and Eastern District of California.

3.     Defendants MICHAEL LLAMAS and PETER WOODARD were managing members of LW Premier Holdings, LLC ("LWPH") and the later formed Cobalt One, LLC ("Cobalt One"), both California limited liability

companies. LWPH and Cobalt One shared offices in Tracy, in the State and Eastern District of California.

4. Defendants MICHAEL LLAMAS and PETER WOODARD controlled bank accounts associated with LWPH and Cobalt One at Bank of America in Tracy, California.

5. Defendant JOSEPH A. GEKKO resided in Tulsa, Oklahoma, and in Orange County, California. He controlled an entity called Lender Services Direct ("LSD"), an unlicensed escrow company with offices in Tulsa, Oklahoma, and Mission Viejo, California.

6. Defendant JOSEPH A. GEKKO controlled bank accounts associated with LSD at South County Bank in Rancho Santa Margarita, California, and in Irvine, California.

7. Defendant DAWN POWERS resided in Placer County, in the State and Eastern District of California. Defendant POWERS was an employee of Loomis Wealth Solutions ("LWS") and worked directly for and reported to defendant LEE LOOMIS.

8. Defendant DAWN POWERS was a signatory on the bank accounts of the Naras Funds maintained at Washington Mutual Bank in both Roseville, California and Glendale Heights, Illinois.

## II. THE SCHEME TO DEFRAUD

9. Beginning no later than in November 2007 and continuing through approximately August 2008, in the State and Eastern District of California, and elsewhere, defendants LEE LOOMIS, MICHAEL LLAMAS, PETER WOODARD, JOSEPH A. GEKKO, DAWN C. POWERS, and others known and unknown to the Grand Jury, did knowingly devise, intend to devise, and participate in a material scheme and artifice to defraud residential real property lenders and participants in the secondary loan market and to obtain property by means of materially false and fraudulent

pretenses, representations, and promises from such lenders and
participants. As a result of the fraud, defendants LEE LOOMIS,
MICHAEL LLAMAS, PETER WOODARD, JOSEPH A. GEKKO, DAWN C. POWERS, and
others, obtained real property and money to which they were not
entitled.

### III. WAYS AND MEANS

The principal ways and means used to accomplish the scheme to
defraud were as follows:

10. The allegations contained in paragraphs 6-8 of Counts
Twenty-Four through Twenty-Six of this Superseding Indictment are re-
alleged and incorporated herein as if set forth in full.

11. To provide properties for the nominees to buy so that they
could participate in defendant LEE LOOMIS's "assurance" plan to
generate income to pay insurance premiums to Insurance Company A, in
late 2007 the defendants began to acquire newly-built homes and
converted condominiums from developers at substantial discounts. Such
properties were to be sold to nominee investors at full list price.
Lenders were deceived into believing that that the nominees had
sufficient assets and limited liabilities to buy these properties and
were providing money for the down payments. In addition, defendants
misled lenders about the actual sales price of the homes.

12. In approximately September 2007, defendant LEE LOOMIS was
introduced to defendants MICHAEL LLAMAS and PETER WOODARD. Defendants
LLAMAS and WOODARD, through LWPH and Cobalt (collectively,
"LWPH/Cobalt"), approached builders of new homes and developers of
condominium conversion projects and entered into "option contracts" or
"joint venture" agreements that included a price discount of
approximately 30% to 50% off the reported sale price of each property

to be sold as part of a bulk real estate purchase.  In 2007 and 2008, with the knowledge of defendant LEE LOOMIS, LWPH/Cobalt entered into such agreements with home builders and developers located in Bakersfield, California; Atwater, California; Ft. Myers, Florida; Port St. Lucie, Florida; and other locations.  Under the agreement, it appeared that LWPH/Cobalt would buy the properties in bulk.

13.   In reality, LWPH/Cobalt did not intend to purchase the homes and take title to them. Rather, the homes were to be sold to individual nominees recruited by defendant LOOMIS and others as part of defendant LOOMIS's "assurance" payment plan involving payments to Insurance Company A.  More particularly, after acquiring the "option" to purchase the homes at a discounted price, LWPH/Cobalt "assigned" the rights to buy the homes to the nominees at the full reported sale price, not at the discounted price at which they were actually acquired.

14.   Between in or about December 2007 through in or about April 2008, in furtherance of the scheme, defendants LEE LOOMIS, MICHAEL LLAMAS, PETER WOODARD, and others, caused nominee buyers recruited by defendant LEE LOOMIS to purchase approximately twenty-three residential real properties in Bakersfield, in the State and Eastern District of California, as part of the program, including the following properties:

| Property Description | Nominee Buyer(s) |
| --- | --- |
| 9212 Rhine Valley Dr., Bakersfield, CA | A.M. and S.M. |
| 9020 Sentido Dr., Bakersfield, CA | A.M. and S.M. |
| 9308 Rhine Valley Dr., Bakersfield, CA | E.A. and N.A. |
| 9201 Rhine Valley Dr., Bakersfield, CA | K.M.L. |
| 9313 Sentido Dr., Bakersfield, CA | J.H. and J.H. |

| | |
|---|---|
| 9226 La Sonrisa Way, Bakersfield, CA | G.W. and D.W. |
| 9312 Rosewood Ave., Bakersfield, CA | A.G. and S.G. |
| 9316 Rosewood Ave., Bakersfield, CA | A.G. and S.G. |
| 9305 Sentido Dr., Bakersfield, CA | W.E. and T.E. |
| 9003 Rhine Valley Dr., Bakersfield, CA | C.L. and M.L. |
| 9019 Rhine Valley Dr., Bakersfield, CA | C.L. and M.L. |

15.  Defendant LEE LOOMIS and others typically obtained individual home loans for the nominees through the Loomis-controlled entity NLG to finance the purchases as investment properties at the full sales price paid by the nominee.  Defendant LEE LOOMIS and others did not disclose the existence of the option contract price discount to the lenders nor to the participants in the secondary loan market.

16.  Defendants LEE LOOMIS, MICHAEL LLAMAS, PETER WOODARD, JOSEPH A. GEKKO, DAWN C. POWERS, and others, including Christopher Jared Warren, who ran NLG on a day-to-day basis, variously arranged that purchase contracts, NLG's loan applications, and LSD's Form HUD-1 Settlement Statements for nominees provided to lenders falsely represented that borrowers would be making down payments of approximately 10% to 20% of the reported purchase price of the homes. Through a series of sham financial transactions, defendants deceptively made it appear that the nominee buyers had made a genuine down payment from their own funds when, in fact, the buyers made no genuine down payment.

17.  To make it appear that a nominee buyer was making the down payment, defendants LEE LOOMIS, DAWN POWERS, and others typically caused the Naras Fund to write a check to the GEKKO-controlled escrow company, Lender Services Direct ("LSD"), for the amount of the down

1   payment that was supposedly from the nominee buyer. Because the Naras
2   Fund bank accounts frequently ran short of funds and could not cover
3   the outstanding checks written to LSD, defendant GEKKO directed LSD
4   employees to hold down payment checks until after the loans were
5   funded and lender money was received by LSD. Then, before the close
6   of escrow and at the direction of defendant GEKKO and employees of
7   LSD, LSD's bank wired an amount of money representing the savings from
8   the option agreement discount to the bank accounts of LWPH/Cobalt.
9   LWPH/Cobalt, in turn, subtracted the down payment amounts from the
10  option savings wires it received. LWPH/Cobalt then wired the down
11  payment amounts to the Naras Fund bank accounts.

12      18.     After the lenders' funds were credited to the Naras Fund
13  bank account, LSD deposited the purported "down payment" checks from
14  the Naras Fund. After that, LWPH/Cobalt divided what was left (that
15  is, the difference between the option savings minus the down payment),
16  retained half of that amount, and wired the other half to LWS as its
17  share of the profit split with LWPH/Cobalt.

18      19.     As a result of these machinations, lenders and participants
19  in the secondary loan market were deceived into believing that the
20  nominees had made down payments on the properties and therefore had a
21  substantial financial stake from their own funds in the properties. In
22  fact, no down payments had been made by the nominees at all. Any down
23  payment actually came from the lenders. Defendants LOOMIS, POWERS,
24  LLAMAS, WOODARD, GEKKO and others caused millions of dollars to be
25  transferred via interstate wire in furtherance of this aspect of the
26  scheme.

27      20.     At the direction of defendant JOSEPH A. GEKKO and others,
28  LSD created many of the HUD-1 Settlement Statements used in the

22

closing of the fraudulent home purchases that were provided to lenders and participants in the secondary loan market. As defendants LEE LOOMIS, MICHAEL LLAMAS, PETER WOODARD, JOSEPH A. GEKKO, DAWN C. POWERS, and others knew, LSD's Estimated HUD-1 Settlement Statements ordinarily concealed the large intended option savings payments to LWPH/Cobalt. This was done in order to deceive lenders and borrowers during the underwriting and funding process. After funding, at the direction of defendants GEKKO, LLAMAS, and others, LSD caused Final HUD-1 Settlement Statements to be produced which then included large payments to LWPH/Cobalt as seller's side obligations. The Final HUD-1 Settlement Statement concealed the fact that the disbursements to LWPH/Cobalt were, in fact, an aggregate sum of the illusory down payments and the profit split between LWPH/Cobalt and LWS in connection with the option contract.

21. The payments to Cobalt One on the Final HUD-1 Settlement Statements were sometimes disguised as payments to satisfy mortgage loans or liens on properties supposedly held by Cobalt One. In truth, Cobalt One did not hold mortgage loans or liens on the properties that were being sold to nominees. On several occasions, defendants MICHAEL LLAMAS and PETER WOODARD caused builders and developers who had entered into an option contract to record a false Deed of Trust in favor of Cobalt One for a fictitious debt in an amount equal to the price discount on the properties. Cobalt One did this to deceive lenders and participants in the secondary loan market into believing that the large payment to Cobalt One was in connection with a legitimate lien and to conceal the fact that the builder, in truth, had sold the property for a substantially lower price than the sales price reported to the lenders.

22. NLG and others falsely represented on the asset portion of buyers' home loan applications that nominee buyers had liquid assets in the Naras Funds, when, in truth, monies in the Naras Funds were not liquid and were regularly used to fund current operating expenses of AFGH, LWS and other entities controlled by defendant LEE LOOMIS. In some instances, NLG and others falsely represented on the asset portion of home loan applications for nominee buyers that the nominees had liquid assets in the Naras Funds when, in truth, they had made no investment in the Naras Funds at all.

23. At the direction of defendant LEE LOOMIS, and others, including Christopher Jared Warren of NLG, defendant DAWN C. POWERS and others provided to lenders false verifications of deposit in the Naras Funds on behalf of nominees who were purchasing/financing homes.

24. Defendants LEE LOOMIS, and others, including Christopher Jared Warren of NLG, caused borrowers' income and assets to be inflated and caused the liabilities of certain borrowers to be concealed on uniform residential loan applications, as necessary, to obtain funding on mortgage loans.

25. From in or about June 2008 through in or about August 2008, defendants JOSEPH A. GEKKO, LEE LOOMIS, and others, through a series of eight large interstate wire transfers caused over $3,000,000 of lender money in LSD's escrow account to be wired directly from LSD's bank account to the bank accounts of LWS and another entity associated with defendant LOOMIS, North State Property Management, so that defendant LOOMIS could make required payroll payments, pay overdue mortgages, and further the continuation of the scheme. That resulted in LSD not having sufficient funds in its account to close escrow on many transactions for which it had received lender funds.

26. As a result of the above-described fraudulent actions of defendants and others, nominees were caused to purchase and finance over 200 properties, causing over $10,000,000 in losses to lenders and participants in the secondary loan market.

## V.  THE MAILINGS

27. On or about the dates set forth below, in the State and Eastern District of California, defendants LEE LOOMIS, MICHAEL LLAMAS, PETER WOODARD, JOSEPH A. GEKKO, DAWN C. POWERS, and others known and unknown to the Grand Jury, for the purpose of executing the above-described scheme, did knowingly place, and cause to be placed, in an authorized depository for mail matter, the mail matter described below, to be sent and delivered by the United States Postal Service, or knowingly caused the mail matter described below to be delivered by private and commercial interstate carrier:

| Ct | Date | Sender | Recipient | Item |
|---|---|---|---|---|
| 27 | 12/07/2007 | Kern County Recorder's Office, Bakersfield, CA | Lender Services Direct, Mission Viejo, CA | Deed of Trust re: 9020 Sentido Dr., Bakersfield, CA, sent via U.S. Mail |
| 28 | 01/02/2008 | Kern County Recorder's Office, Bakersfield, CA | Lender Services Direct, Mission Viejo, CA | Deed of Trust for $1,260,000.00, sent via U.S. mail |
| 29 | 01/11/2008 | Kern County Recorder's Office, Bakersfield, CA | Lender Services Direct, Mission Viejo, CA | Deed of Trust for $2,097,288.00, sent via U.S. mail |

All in violation of Title 18, United States Code, Sections 2 and 1341.

///

25

COUNTS THIRTY THROUGH FIFTY: [18 U.S.C. § 1343 - Wire Fraud]

The Grand Jury further charges:

LEE LOOMIS,
aka Lawrence Leland Loomis,
MICHAEL LLAMAS,
PETER WOODARD,
JOSEPH A. GEKKO, and
DAWN C. POWERS,

defendants herein, as follows:

1.    The allegations contained in paragraphs 1-26 of Counts Twenty-Seven through Twenty-Nine of this Superseding Indictment are re-alleged and incorporated herein as if set forth in full.

2.    On or about the dates set forth below, in the State and Eastern District of California, defendants LEE LOOMIS, MICHAEL LLAMAS, PETER WOODARD, JOSEPH A. GEKKO, DAWN C. POWERS, and others known and unknown to the grand jury, for the purpose of executing the above-described scheme, did knowingly cause to be transmitted by means of wire communication in interstate commerce, certain writings, signs, signals, pictures and sounds, as described below:

| CT | DATE OF WIRE | DESCRIPTION OF APPROXIMATE WIRE TRANSFER | SENDER | RECIPIENT |
|----|--------------|------------------------------------------|--------|-----------|
| 30 | 12/10/2007 | $78,757 interstate wire transfer sent via Fedwire system by LSD re: 9212 Rhine Valley Dr. | South County Bank, Rancho Santa Margarita, CA | Bank of America, Tracy, CA |
| 31 | 12/10/2007 | $78,757 interstate wire transfer sent via Fedwire system by LSD re: 9020 Sentido Dr. | South County Bank, Rancho Santa Margarita, CA | Bank of America, Tracy, CA |

| CT | DATE OF WIRE | DESCRIPTION OF APPROXIMATE WIRE TRANSFER | SENDER | RECIPIENT |
|----|-------------|------------------------------------------|--------|-----------|
| 32 | 12/10/2007 | $109,714 interstate wire transfer sent via Fedwire system by LWPH re: 9020 Sentido Dr. and 9308 Rhine Valley Dr. | Bank of America, Tracy, CA | Washington Mutual Bank, Roseville, CA |
| 33 | 12/10/2007 | $35,310 interstate wire transfer sent via Fedwire system by LWPH re: 9212 Rhine Valley Dr., 9020 Sentido Dr., and 9308 Rhine Valley Dr. | Bank of America, Tracy, CA | Washington Mutual Bank, Roseville, CA |
| 34 | 01/02/2008 | $109,094 interstate wire transfer sent via Fedwire system by LWPH re: 9201 Rhine Valley Dr. and other properties | Bank of America, Tracy, CA | Washington Mutual Bank, Roseville, CA |
| 35 | 01/03/2008 | $12,953 interstate wire transfer sent via Fedwire system by LWPH re: 9313 Sentido Dr. | Bank of America Tracy, CA | Washington Mutual Bank, Roseville, CA |
| 36 | 01/04/2008 | $7,444 interstate wire transfer sent via Fedwire system by LWPH re: 9226 La Sonrisa Way | Bank of America Tracy, CA | Washington Mutual Bank, Roseville, CA |
| 37 | 02/19/2008 | $87,757 interstate wire transfer sent via Fedwire system by LSD re: 9312 Rosewood Ave. | South County Bank, Rancho Santa Margarita, CA | Bank of America, Tracy, CA |
| 38 | 02/19/2008 | $83,557 interstate wire transfer sent via Fedwire system by LSD re: 9316 Rosewood Ave. | South County Bank, Rancho Santa Margarita, CA | Bank of America, Tracy, CA |

| CT | DATE OF WIRE | DESCRIPTION OF APPROXIMATE WIRE TRANSFER | SENDER | RECIPIENT |
|---|---|---|---|---|
| 39 | 02/19/2008 | $160,784 interstate wire transfer sent via Fedwire system by Cobalt One re: 9312 Rosewood Ave., 9316 Rosewood Ave., and 9305 Sentido Dr. | Bank of America, Tracy, CA | Washington Mutual Bank, Roseville, CA |
| 40 | 02/19/2008 | $38,643 interstate wire transfer sent via Fedwire system by Cobalt One re: 9316 Rosewood Ave., 9305 Sentido Dr., and 9312 Rosewood Ave. | Bank of America, Tracy, CA | Washington Mutual Bank, Roseville, CA |
| 41 | 02/22/2008 | $101,981 interstate wire transfer sent via Fedwire system by Cobalt One re: 9003 Rhine Valley Dr. and 9019 Rhine Valley Dr. | Bank of America, Tracy, CA | Washington Mutual Bank, Glendale Heights, IL |
| 42 | 02/22/2008 | $27,766 interstate wire transfer sent via Fedwire system by Cobalt One re: 9003 Rhine Valley Dr., 9019 Rhine Valley Dr., and other properties | Bank of America, Tracy, CA | Washington Mutual Bank, Roseville, CA |
| 43 | 06/02/2008 | $250,000 interstate wire transfer sent via Fedwire system from LSD | South County Bank, Rancho Santa Margarita, CA | Washington Mutual Bank, Roseville, CA |
| 44 | 06/10/2008 | $490,000 interstate wire transfer sent via Fedwire system from LSD | South County Bank, Rancho Santa Margarita, CA | Washington Mutual Bank, Roseville, CA |
| 45 | 06/11/2008 | $550,000 interstate wire transfer sent via Fedwire system from LSD | South County Bank, Rancho Santa Margarita, CA | Washington Mutual Bank, Roseville, CA |

28

| CT | DATE OF WIRE | DESCRIPTION OF APPROXIMATE WIRE TRANSFER | SENDER | RECIPIENT |
|---|---|---|---|---|
| 46 | 07/02/2008 | $600,000 interstate wire transfer sent via Fedwire system from LSD | South County Bank, Rancho Santa Margarita, CA | Washington Mutual Bank, Roseville, CA |
| 47 | 07/02/2008 | $300,000 interstate wire transfer sent via Fedwire system from LSD | South County Bank, Rancho Santa Margarita, CA | Washington Mutual Bank, Roseville, CA |
| 48 | 07/09/2008 | $350,000 interstate wire transfer sent via Fedwire system from LSD | South County Bank, Rancho Santa Margarita, CA | Washington Mutual Bank, Roseville, CA |
| 49 | 07/11/2008 | $200,000 interstate wire transfer sent via Fedwire system from LSD | South County Bank, Rancho Santa Margarita, CA | Washington Mutual Bank, Roseville, CA |
| 50 | 08/26/2008 | $320,697 interstate wire transfer sent via Fedwire system from LSD re: various files | South County Bank, Rancho Santa Margarita, CA | Washington Mutual Bank, Roseville, CA |

All in violation of Title 18, United States Code, Sections 2 and 1343.

FORFEITURE ALLEGATION: [18 U.S.C. §§ 981(a)(1)(C), 981(a)(1)(D), 982(a)(2); 28 U.S.C. § 2461(c)]

The Grand Jury further charges:

1.    The allegations contained in the above Superseding Indictment, including Counts One through Fifty of this Superseding Indictment, are hereby re-alleged and incorporated for the purpose of

29

alleging forfeiture pursuant to Title 18, United States Code, §§
981(a)(1)(C), 981(a)(1)(D), 982(a)(2); and Title 28, United States
Code, § 2461.

2.     Pursuant to one or more of the following: Title 18, United
States Code, §§ 981(a)(1)(C), 981(a)(1)(D), 982(a)(2); and Title 28,
United States Code, § 2461, and upon conviction of one or more of the
offenses set forth in the above Superseding Indictment, defendants
LEE LOOMIS, JOHN HAGENER, DARREN FEHST, MICHAEL LLAMAS, PETER
WOODARD, JOSEPH A. GEKKO, and DAWN C. POWERS, shall forfeit to the
United States, any and all property, real or personal, which
constitutes or is derived from proceeds of the criminal conduct
and/or scheme alleged in this Superseding Indictment, or any property
traceable to such property, including but not limited to:

        a.     Approximately $133,803.53 in U.S. Currency seized from
               Washington Mutual Bank, N.A., Account # 4420842802,
               held in the name of Advantage Financial Group Holdings
               Management LLC, and

        b.     Approximately $328,495.75 in U.S. Currency seized from
               Washington Mutual Bank, N.A., Account # 4412174338,
               held in the name of Loomis Wealth Solutions LLC.

3.     Pursuant to Title 18, United States Code, §§ 981(a)(1)(C),
981(a)(1)(D), 982(a)(2); and Title 28, United States Code, § 2461, if
any property subject to forfeiture, as a result of any act or
omission of defendants or agents of defendants or upon direction by
the defendants:

        a.  cannot be located upon the exercise of due diligence;
        b.  has been transferred or sold to, or deposited with, a
            third party;

1              c. has been placed beyond the jurisdiction of the court;

2              d. has been substantially diminished in value; or

3              e. has been commingled with other property which cannot

4                 be divided without difficulty,

5  the United States of America shall be entitled to forfeiture of any

6  other property of the defendants, up to the value of the property

7  subject to forfeiture, including but not limited to a personal

8  forfeiture money judgment, pursuant to Title 21, United States Code,

9  Section 853(p), as incorporated by Title 18, United States Code,

10 Section 982(b)(1), and Title 28, United States Code, Section 2461(c).

A TRUE BILL.

/S/

FOREPERSON

BENJAMIN B. WAGNER
United States Attorney

31

No. _ _ _ _ _ _ _ _ _

# UNITED STATES DISTRICT COURT

*Eastern District of California*

*Criminal Division*

## THE UNITED STATES OF AMERICA
*vs.*

LEE LOOMIS, aka Lawrence Leland Loomis, JOHN HAGENER,
DARREN FEHST, MICHAEL LLAMAS, PETER WOODARD,
JOSEPH A. GEKKO and DAWN C. POWERS

## I N D I C T M E N T

**VIOLATION(S):** 18 U.S.C. § 1341 - Mail Fraud (18 counts);
18 U.S.C. § 1343 - Wire Fraud (32 counts); and
18 U.S.C. §§ 981(a)(1)(C), 981(a)(1)(D), 982(a)(2);
28 U.S.C. § 2461(c) - Criminal Forfeiture

*A true bill,*

_ _ _ _ _ _ _ _ _ _ _ /S/ _ _ _ _ _ _ _ _ _ _
*Foreman.*

*Filed in open court this* _ _ _ _ 30 _ _ _ _ *day*

*of* _ _ _ _ MAY _ _ _ _ *, A.D. 20* 13 _ _

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
*Clerk.*

*Bail, $* _ _ _ _ **NO PROCESS NECESSARY** *as to Loomis, Hagener, Llamas, Woodard, Gekko and Powers*

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

**NO BAIL WARRANT** *as to Fehst*

GPO 863 525

## PENALTY SLIP
## SUPERSEDING INDICTMENT

**DEFENDANTS:**        LEE LOOMIS, aka Lawrence Leland Loomis
JOHN HAGENER, DARREN FEHST, MICHAEL LLAMAS,
PETER WOODARD, and JOSEPH A. GEKKO,
and DAWN C. POWERS

## COUNTS 1-12, 24-26 and 27-29:

**VIOLATION:**        18 U.S.C. § 1341 - Mail Fraud

**PENALTY:**        Not more than 20 years imprisonment,
$250,000 fine, or both
Up to 3 years supervised release.

For Count 24, which affected a financial
institution, Not more than 30 years,
$250,000 fine, not more than 5 years
supervised release

**DEFENDANTS:**        LEE LOOMIS, aka Lawrence Leland Loomis
JOHN HAGENER, MICHAEL LLAMAS,
PETER WOODARD, JOSEPH A. GEKKO,
and DAWN C. POWERS

## COUNTS 13-23 and 30-50:

**VIOLATION:**        18 U.S.C. § 1343 - Wire Fraud

**PENALTY:**        Not more than 20 years imprisonment,
$250,000 fine, or both
Up to 3 years supervised release.

**VIOLATION:**        18 U.S.C. § 981(a)(1)(C), 981(a)(1)(D),
982(a)(2) and 28 U.S.C. § 2461(c) - Criminal
Forfeiture

**PENALTY:**        Criminal forfeiture of Money or property is
subject to proof in a separate proceeding
immediately following conviction at a
criminal trial

**PENALTY ASSESSMENT:** $100 assessment for each count