BENJAMIN B. WAGNER
United States Attorney
PAUL A. HEMESATH
Assistant U.S. Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

**FILED**

JUN 17 2014

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. 2:12-CR-315 JAM |
|---|---|
| Plaintiff, | PLEA AGREEMENT |
| v. | DATE: June 17, 2014 |
| JOSEPH GEKKO, | TIME: 9:30 a.m. |
| Defendant. | COURT: Hon. John A. Mendez |

## I.  INTRODUCTION

### A.  Scope of Agreement

The superseding indictment in this case charges the defendant with three counts in violation of 18 U.S.C. § 1341 (mail fraud), 21 counts in violation of 18 U.S.C. § 1343 (wire fraud) and forfeiture allegations. This document contains the complete plea agreement between the United States Attorney's Office for the Eastern District of California (the "government") and the defendant regarding this case. This plea agreement is limited to the United States Attorney's Office for the Eastern District of California and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities.

### B.  Court Not a Party

The Court is not a party to this plea agreement. Sentencing is a matter solely within the discretion of the Court, and the Court may take into consideration any and all facts and circumstances

1

concerning the criminal activities of defendant, including activities that may not have been charged in the superseding indictment. The Court is under no obligation to accept any recommendations made by the government, and the Court may in its discretion impose any sentence it deems appropriate up to and including the statutory maximum stated in this plea agreement.

If the Court should impose any sentence up to the maximum established by the statute, the defendant cannot, for that reason alone, withdraw his guilty plea, and he will remain bound to fulfill all of the obligations under this plea agreement. The defendant understands that neither the prosecutor, defense counsel, nor the Court can make a binding prediction or promise regarding the sentence he will receive.

## II.      **DEFENDANT'S OBLIGATIONS**

### A.      Guilty Plea

The defendant will plead guilty to counts 30, 31, and 32 in the superseding indictment: violations of 18 U.S.C. § 1343. The defendant agrees that he is in fact guilty of this charge and that the facts set forth in the Factual Basis For Plea attached hereto as Exhibit A are accurate.

The defendant agrees that this plea agreement will be filed with the Court and become a part of the record of the case. The defendant understands and agrees that he will not be allowed to withdraw his plea should the Court not follow the government's sentencing recommendations.

The defendant agrees that the statements made by him in signing this Agreement, including the factual admissions set forth in the factual basis, shall be admissible and useable against the defendant by the United States in any subsequent criminal or civil proceedings, even if the defendant fails to enter a guilty plea pursuant to this Agreement. The defendant waives any rights under Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence, to the extent that these rules are inconsistent with this paragraph or with this Agreement generally.

### B.      Restitution

The Mandatory Victim Restitution Act requires the Court to order restitution to the victims of certain offenses. Defendant agrees that his conduct is governed by the Mandatory Restitution Act pursuant to 18 U.S.C. § 3663A(c)(1)(A)(ii) and agrees to pay the full amount of restitution to all victims affected by this offense, including, but not limited to, the victims covered in the factual basis, victims

covered in those counts to be dismissed as part of the plea agreement pursuant to 18 U.S.C. § 3663A(a)(3), and any other victims of the offenses charged.  Moreover, defendant separately agrees to pay restitution, pursuant to 18 U.S.C. § 3663(a)(3), to all victims of the offenses charged.  The amount of restitution will be between 7 million and 18 million dollars.

Defendant further agrees that he will not seek to discharge any restitution obligation or any part of such obligation in any bankruptcy proceeding.

Payment of restitution shall be by cashier's or certified check made payable to the Clerk of the Court.

**C.    Fine**

The defendant and the government agree that the fine will be determined by the United States Probation Office, taking into consideration the final restitution amount and his ability to pay.

**D.    Special Assessment**

The defendant agrees to pay a special assessment of $300 at the time of sentencing by delivering a check or money order payable to the United States District Court immediately before the sentencing hearing.  The defendant understands that this plea agreement is voidable at the option of the government if he fails to pay the assessment prior to that hearing.  If the defendant is unable to pay the special assessment at the time of sentencing, he agrees to earn the money to pay the assessment, if necessary by participating in the Inmate Financial Responsibility Program.

**E.    Agreement to Cooperate**

The defendant agrees to cooperate fully with the government and any other federal, state, or local law enforcement agency, as directed by the government.  As used in this plea agreement, "cooperation" requires the defendant:  (1) to respond truthfully and completely to all questions, whether in interviews, in correspondence, telephone conversations, before a grand jury, or at any trial or other court proceeding; (2) to attend all meetings, grand jury sessions, trials, and other proceedings at which the defendant's presence is requested by the government or compelled by subpoena or court order; (3) to produce voluntarily any and all documents, records, or other tangible evidence requested by the government; (4) not to participate in any criminal activity while cooperating with the government; and (5) to disclose to the government the existence and status of all money, property, or assets, of any kind,

1   derived from or acquired as a result of, or used to facilitate the commission of, the defendant's illegal
2   activities or the illegal activities of any conspirators.

3            **F.    Defendant's Violation of Plea Agreement or Withdrawal of Plea**

4            If the defendant, cooperating or not, violates this plea agreement in any way, withdraws his plea,
5   or tries to withdraw his plea, this plea agreement is voidable at the option of the government.  The
6   government will no longer be bound by its representations to the defendant concerning the limits on
7   criminal prosecution and sentencing as set forth herein.  One way a cooperating defendant violates the
8   plea agreement is to commit any crime or provide any statement or testimony which proves to be
9   knowingly false, misleading, or materially incomplete.  Any post-plea conduct by a defendant
10  constituting obstruction of justice will also be a violation of the agreement.  The determination whether
11  the defendant has violated the plea agreement shall be decided under a probable cause standard.

12           If the defendant violates the plea agreement, withdraws his plea, or tries to withdraw his plea, the
13  government shall have the right: (1) to prosecute the defendant on any of the counts to which he pleaded
14  guilty; (2) to reinstate any counts that may be dismissed pursuant to this plea agreement, including any
15  counts contained in previous indictments and superseding indictments against the defendant; and (3) to
16  file any new charges that would otherwise be barred by this plea agreement.  The defendant shall
17  thereafter be subject to prosecution for any federal criminal violation of which the government has
18  knowledge, including perjury, false statements, and obstruction of justice.  The decision to pursue any or
19  all of these options is solely in the discretion of the United States Attorney's Office.

20           By signing this plea agreement, the defendant agrees to waive any objections, motions, and
21  defenses that the defendant might have to the government's decision to exercise the options stated in the
22  previous paragraph.  Any prosecutions that are not time-barred by the applicable statute of limitations as
23  of the date of this plea agreement may be commenced in accordance with this paragraph,
24  notwithstanding the expiration of the statute of limitations between the signing of this plea agreement
25  and the commencement of any such prosecutions.  The defendant agrees not to raise any objections
26  based on the passage of time with respect to such counts including, but not limited to, any statutes of
27  limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth
28  Amendment to any counts that were not time-barred as of the date of this plea agreement, including any

counts contained in previous indictments and superseding indictments against the defendant.

In addition: (1) all statements made by the defendant to the government or other designated law enforcement agents, or any testimony given by the defendant before a grand jury or other tribunal, whether before or after this plea agreement, shall be admissible in evidence in any criminal, civil, or administrative proceedings hereafter brought against the defendant; and (2) the defendant shall assert no claim under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made by the defendant before or after this plea agreement, or any leads derived therefrom, should be suppressed. By signing this plea agreement, the defendant waives any and all rights in the foregoing respects.

### G.  Asset Disclosure

The defendant agrees to make a full and complete disclosure of his assets and financial condition, and will complete the United States Attorney's Office's "Authorization to Release Information" and "Financial Affidavit" within five weeks from the entry of the defendant's change of plea. The defendant also agrees to have the Court enter an order to that effect. The defendant understands that this plea agreement is voidable at the option of the government if the defendant fails to complete truthfully and provide the described documentation to the United States Attorney's office within the allotted time.

## III.  THE GOVERNMENT'S OBLIGATIONS

### A.  Dismissals

The government agrees not to reinstate any dismissed count in any previous charging document, except if this agreement is voided as set forth herein, or as provided in paragraphs III.B.3 (Cooperation), II.F (Defendant's Violation of Plea Agreement), and VII.B (Waiver of Appeal) herein.

### B.  Recommendations

#### 1.  Incarceration Range

The government will recommend that the defendant be sentenced to the low end of the applicable guideline range for his offense.

#### 2.  Acceptance of Responsibility

The government will recommend a two-level reduction (if the offense level is less than

16) or a three-level reduction (if the offense level reaches 16) in the computation of defendant's offense level if he clearly demonstrates acceptance of responsibility for his conduct as defined in U.S.S.G. § 3E1.1. This includes the defendant meeting with and assisting the probation officer in the preparation of the pre-sentence report, being truthful and candid with the probation officer, and not otherwise engaging in conduct that constitutes obstruction of justice within the meaning of U.S.S.G § 3C1.1, either in the preparation of the pre-sentence report or during the sentencing proceeding.

### 3. Reduction of Sentence for Cooperation

The government agrees to recommend at the time of sentencing that the defendant's sentence of imprisonment be reduced by up to 60%, if he provides substantial assistance to the government, pursuant to U.S.S.G. § 5K1.1. The defendant understands that he must comply with paragraph II.E (Agreement to Cooperate) and not violate this plea agreement, as set forth in paragraph II.F (Defendant's Violation of Plea Agreement) herein. The defendant understands that it is within the sole and exclusive discretion of the government to determine whether the defendant has provided substantial assistance.

The defendant understands that the government may recommend a reduction in his sentence of less than 30% or no reduction at all, based upon the level of assistance the government determines that the defendant has provided.

The defendant further understands that a motion pursuant to U.S.S.G. § 5K1.1 is only a recommendation and is not binding on the Court, that this plea agreement confers no right upon the defendant to require that the government make a § 5K1.1 motion, and that this plea agreement confers no remedy upon the defendant in the event that the government declines to make a § 5K1.1 motion. In particular, the defendant agrees not to try to file a motion to withdraw his guilty plea based on the fact that the government decides not to recommend a sentence reduction or recommends a sentence reduction less than the defendant thinks is appropriate.

If the government determines that the defendant has provided further cooperation within one year following his sentencing, the government may move for a further reduction of his sentence pursuant to Rule 35 of the Federal Rules of Criminal Procedure.

**C.    Use of Information for Sentencing**

The government is free to provide full and accurate information to the Court and the United States Probation Office ("Probation"), including answering any inquiries made by the Court and/or Probation, and rebutting any inaccurate statements or arguments by the defendant, his attorney, Probation, or the Court.  The defendant also understands and agrees that nothing in this Plea Agreement bars the government from defending on appeal or collateral review any sentence that the Court may impose.

Further, other than as set forth above, the government agrees that any incriminating information provided by the defendant during his cooperation will not be used in determining the applicable guideline range, pursuant to U.S.S.G. § 1B1.8., unless the information is used to respond to representations made to the Court by the defendant, or on his behalf, that contradict information provided by the defendant during his cooperation.

## IV.    ELEMENTS OF THE OFFENSE

At a trial, the government would have to prove beyond a reasonable doubt the following elements of the offense to which the defendant is pleading guilty (a violation of 18 U.S.C. § 1343 – wire fraud):

1.  That a defendant knowingly participated in or devised a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises;

2.  That the statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

3.  That a defendant acted with the intent to defraud; that is, the intent to deceive or cheat; and

4.  That a defendant used, or caused to be used, the wires to carry out or attempt to carry out an essential part of the scheme.

The defendant represents that he fully understands the nature and elements of the crimes charged in the superseding indictment to which he is pleading guilty, together with the possible defenses thereto, and has discussed them with his attorney.

## V.     MAXIMUM SENTENCE

### A.     Maximum Penalty

The maximum sentence that the Court can impose with regard to each of the counts to which defendant is pleading guilty is 20 years of incarceration, a fine of $ $250,000 (or the greater of twice the gross gain or twice the gross loss, as defined by 18 U.S.C. § 3571(d)), a three-year period of supervised release and a special assessment of $100.  By signing this plea agreement, the defendant also agrees that the Court can order the payment of restitution for the full loss caused by the defendant's wrongful conduct.  The defendant agrees that the restitution order is not restricted to the amounts alleged in the specific counts to which the defendant is pleading guilty.  The defendant further agrees, as noted above, that he will not attempt to discharge in any present or future bankruptcy proceeding any restitution imposed by the Court.

### B.     Violations of Supervised Release

The defendant understands that if he violates a condition of supervised release at any time during the term of supervised release, the Court may revoke the term of supervised release and require the defendant to serve up to two years of additional imprisonment.

## VI.     SENTENCING DETERMINATION

### A.     Statutory Authority

The defendant understands that the Court must consult the Federal Sentencing Guidelines and must take them into account when determining a final sentence.  The defendant understands that the Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the Sentencing Guidelines and must take them into account when determining a final sentence.  The defendant further understands that the Court will consider whether there is a basis for departure from the guideline sentencing range (either above or below the guideline sentencing range) because there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines.  The defendant further understands that the Court, after consultation and consideration of the Sentencing Guidelines, must impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

## B.   Guideline Calculations

The government and the defendant agree that that there is no material dispute as to the following sentencing guidelines variables and therefore stipulate to the following:

| | | |
|---|---|---|
| Base Offense Level | +7 | (§2B1.1) |
| Specific Offense Characteristics:  Loss amount | +20 | (§2B1.1(b)(1)) |
| Victim-related Adjustments: More than ten victims | +2 | (§2B1.1(b)(2)) |
| More than $1,000,000 in gross receipts | +2 | (§2B1.1(b)(16)(A)) |
| Sophisticated means | +2 | (§2B1.1(b)(9)) |
| Manager or supervisor in scheme with more than five participants | +3 | (§3B1.1(1)(a)) |
| Abuse of position of trust/special skill | +2 | (§3B1.3) |
| | | |
| Acceptance of Responsibility:  (see III.B.2, above) | -3 | |

*Criminal History Category: I*

**Total Offense Level:**                                              **35/I = 168-210**

Except as set forth below, the parties stipulate and agree that they will not seek or argue in support of any other specific offense characteristics, Chapter Three adjustments (other than the decrease for "Acceptance of Responsibility"), or cross-references.  The parties further stipulate and agree not to move for, or argue in support of, any departure from the Sentencing Guidelines, as contemplated by this agreement.  The above notwithstanding, the government may move for a departure or adjustment based on defendant's post-plea obstruction of justice (§3C1.1) or defendant's cooperation (§5K1.1), and the defense may argue for any sentence pursuant to factors set forth in 18 U.S.C. § 3553.

## VII.   WAIVERS

### A.   Waiver of Constitutional Rights

The defendant understands that by pleading guilty he is waiving the following constitutional rights: (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to be assisted at trial by an attorney, who would be appointed if necessary; (d) to subpoena witnesses to testify on his behalf; (e) to confront and cross-examine witnesses against him; and (f) not to be compelled to incriminate himself.

### B.   Waiver of Appeal and Collateral Attack

The defendant understands that the law gives the defendant a right to appeal his guilty plea,

1  conviction, and sentence. The defendant agrees as part of his plea/pleas, however, to give up the right to
2  appeal the guilty plea, conviction, and the sentence imposed in this case as long as the sentence does not
3  exceed 210 months. The defendant specifically gives up the right to appeal any order of restitution the
4  Court may impose.

5       Notwithstanding the defendant's waiver of appeal, the defendant will retain the right to appeal if
6  one of the following circumstances occurs: (1) the sentence imposed by the District Court exceeds the
7  statutory maximum; and/or (2) the government appeals the sentence in the case. The defendant
8  understands that these circumstances occur infrequently and that in almost all cases this Agreement
9  constitutes a complete waiver of all appellate rights.

10      In addition, regardless of the sentence the defendant receives, the defendant also gives up any
11  right to bring a collateral attack, including a motion under 28 U.S.C. § 2255 or § 2241, challenging any
12  aspect of the guilty plea, conviction, or sentence, except for non-waivable claims.

13      Notwithstanding the agreement in paragraph III.A (Dismissals) above (that the government will
14  move to dismiss counts against the defendant), if the defendant ever attempts to vacate his plea, dismiss
15  the underlying charges, or modify or set aside his sentence on any of the counts to which he is pleading
16  guilty, the government shall have the rights set forth in paragraph II.F (Defendant's Violation of Plea
17  Agreement) herein.

18      **C.   Waiver of Attorneys' Fees and Costs**

19      The defendant agrees to waive all rights under the "Hyde Amendment," Section 617, P.L. 105-
20  119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the
21  investigation and prosecution of all charges in the above-captioned matter and of any related allegations
22  (including without limitation any charges to be dismissed pursuant to this plea agreement and any
23  charges previously dismissed).

24               **VIII.   ENTIRE PLEA AGREEMENT**

25      Other than this plea agreement, no agreement, understanding, promise, or condition between the
26  government and the defendant exists, nor will such agreement, understanding, promise, or condition
27  exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and
28  counsel for the United States.

PLEA AGREEMENT                          10

## IX.    APPROVALS AND SIGNATURES

### A.    Defense Counsel:

I have read this plea agreement and have discussed it fully with my client. The plea agreement accurately and completely sets forth the entirety of the agreement. I concur in my client's decision to plead guilty as set forth in this plea agreement.

Dated: 6/17/14

Michael Bigelow
Counsel for Defendant

### B.    Defendant:

I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines and factors under 18 U.S.C. § 3553 that may apply to my case. No other promises or inducements have been made to me, other than those contained in this plea agreement. In addition, no one has threatened or forced me in any way to enter into this plea agreement. Finally, I am satisfied with the representation of my attorney in this case.

Dated: 6/17/14

JOSEPH GEKKO, Defendant

### C.    Attorney for United States:

I accept and agree to this plea agreement on behalf of the government.

Dated: June 17, 2014

BENJAMIN B. WAGNER
United States Attorney

PAUL A. HEMESATH
Assistant United States Attorney

PLEA AGREEMENT                                        11

**EXHIBIT "A"**
**Factual Basis for Plea**

If this matter proceeded to trial, the United States would establish the following facts beyond a reasonable doubt:

Defendant Joseph GEKKO was the principal in an unlicensed escrow company known as Lender Services Direct ("LSD"). In his role at LSD, GEKKO knowingly participated in a scheme to defraud by means of fraudulent representations to mortgage lenders, as further set forth below.

GEKKO's role was part of a complex scheme to defraud mortgage lenders by deceiving them about: (1) the true sales price of the homes the lenders were underwriting, (2) the absence of earnest down-payments on the part of "Nominee Home Buyers" (defined below), (3) the credit-worthiness of those same Nominee Home Buyers, and (4) the nature of the transactional relationship between the sellers and the buyers. Other defendants—Lee LOOMIS, Peter WOODARD, Dawn POWERS, and Michael LLAMAS—played other roles in the scheme. Nominee Home Buyers were members of Loomis Wealth Solutions. These buyers had been promised by LOOMIS, and others, that they would profit from the purchase of homes that were selected by LOOMIS.

**FALSE SALES PRICES**

WOODARD and LLAMAS (as LW Premier and acting in conjunction with LOOMIS) entered into an agreement with a certain home builder, in which LW Premier would provide buyers for approximately 200 homes in Bakersfield, California, at full appraised prices. In exchange, the builder agreed to allow LW Premier to keep 30% of the stated sale price. WOODARD and LLAMAS referred to this arrangement as an "option" contract. LOOMIS provided persons willing to purchase those homes—his Nominee Home Buyers—at their full appraised price. As a result of that deal, Nominee Home Buyers sought and obtained loans for the total appraised prices for these Bakersfield homes, including those identified below.

Lenders—who were unaware of the 30% cut to defendants—provided loans for the homes at 80% of their appraised value, which was significantly higher than the price paid to the home builders. Defendants worked in concert to hide their 30% cut by creating false and misleading HUD-1 forms during the process.

GEKKO facilitated the deception as owner of LSD—an unlicensed escrow company that provided false documents to hide the true sale prices (the real sale price paid to the builder) from the lenders. GEKKO was a manager at LSD and directed others in furtherance of the scheme.

POWERS, in her position at Loomis Wealth Solutions and the Naras Funds, facilitated the deception by signing worthless checks, completing paperwork, and moving money, as necessary, between entities controlled by LOOMIS, WOODARD, LLAMAS and GEKKO.

**DOWN-PAYMENT FRAUD**

Defendants also deceived lenders into believing that earnest homebuyers (in fact, LOOMIS's nominees) had put 20% down-payments to purchase homes. But to recruit persons as Nominee Home Buyers, LOOMIS promised them they would not have to provide down-payments on the properties they purchased. To create the illusion of a buyer-down-payment, POWERS—at the direction of LOOMIS and with the participation of WOODARD, LLAMAS and GEKKO—routinely wrote checks from the

Naras Funds to appear as if they were down-payments from earnest buyers. In fact, those down-payments were rarely by the buyers. Instead, the down-payments were funded almost entirely from the loans from the lenders themselves.

The false source of the down-payments of the Nominee Home Buyers was material in that the lie influenced mortgage lenders to fund loans that they would not otherwise have funded, had they known the true source of those down-payments. Furthermore, the defendants' act of hiding their 30% cut of the total loan proceeds was material in that the deception influenced mortgage lenders to lend money in amounts that they would not otherwise have funded.

As part of the scheme, money was transferred via interstate wire as follows:

- $78,757 sent on December 10, 2007, from South County Bank in Rancho Santa Margarita, California, to Bank of America in Tracy, California, in relation to a property located at 9212 Rhine Valley Drive;
- $78,757 sent on December 10, 2007, from South County Bank in Rancho Santa Margarita, California, to Bank of America in Tracy, California, in relation to a property located at 9020 Sentido Drive;
- $109,714 sent on December 10, 2007, from Bank of America in Tracy, California, to Washington Mutual Bank in Roseville, California, in relation to properties located at 9020 Sentido Drive and 9308 Rhine Valley Drive.

GEKKO understood that the lenders were being deceived about both the false home sales prices and the down-payment fraud. GEKKO furthered the scheme by attending key meetings, providing an escrow process that would accommodate the false documents (e.g., false HUD-1 documentation), and directing the flow and split of money from lender to the builders, LOOMIS and LW Premier.

Dated: _6/17/14_                                    _____

                                                    JOSEPH GEKKO, Defendant